UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| V. | ) | Criminal No. 08-CR-10203-JLT |
| | ) | |
| **EDEN HOK,** | ) | |
| Defendant. | ) | |
| | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Now comes the United States, through undersigned counsel, and respectfully requests that this Court impose a sentence of 24 months in this case, a sentence called for under the applicable provisions of the United States Sentencing Guidelines ("U.S.S.G."), in addition to three years of supervised release with special conditions. As grounds therefore, the government submits the following.

I.   **BACKGROUND**

The government's case against Eden Hok (hereinafter "Hok") demonstrates that Hok is a supplier of firearms to TRG - Grey. TRG is a national street gang with roots in Long Beach and Fresno, California. In its most recent intelligence report and threat assessment, the Boston Division of the FBI rated TRG as one of the most significant national gangs operating in the area. TRG - Grey is an offshoot of the original TRG. According to intelligence from the Lowell Police Department there are

approximately 80 active members of TRG - Grey in Lowell and as many as 60 inactive members. Members of TRG - Grey have been involved in numerous crimes throughout the City of Lowell, including murders, robberies, assaults, shootings, and drug dealing. In short, the defendant was charged as a part of a coordinated effort by state, local and federal law enforcement to address the firearm and gang violence in Lowell after a review of the crime data for the city led to the determination that TRG - Grey was responsible for some of the most violent crime in the City of Lowell. <u>See</u> Affidavit of Special Agent Chad Blackwood, Exhibit 1.

The government's contention that Hok is a supplier of firearms to TRG - Grey is supported by the following transactions, to which Hok has plead Guilty. On September 25, 2007, Hok sold a 9mm, Smith & Wesson, model SW9VE, semi-automatic pistol with serial number PBK7201 and two magazines to the cooperating witness ("CW") in exchange for $450.00 dollars. On October 25, 2007, Hok sold a .40 caliber, Smith & Wesson, model SW40VE, semi-automatic pistol with serial number PBZ5740 and 3 magazines to the CW in exchange for $650.00 dollars. On March 13, 2008, Hok sold a 9mm Luger caliber, S.W.D. Incorporated, model M-11, semi-automatic pistol with serial number 85-0001806, two muzzle attachments, 4 magazines, (2) 7.62 x 39mm cartridges, and (8) 9mm Luger live cartridges to the CW in exchange for

$900.00 dollars.[1]

While Hok is not a TRG gang member and was not known to the Lowell Police prior to this investigation, he has demonstrated that he has the capacity to obtain weapons and is a supplier of weapons to the gang.  According to the CW, Hok is aware that the CW is a gang member and has asked the CW about the gang, other gang members, and their activities.

The government has reviewed the Presentence Report ("PSR") in this matter and agrees with the probation department that the defendant's base offense level, pursuant to U.S.S.G. §2K2.1(a)(7), is 12.  PSR at ¶43.  The government further agrees with the probation department that the base offense level is increased two points pursuant to U.S.S.G. §2K2.1(b)(1)(a), as the offense involved three or more firearms.  PSR at ¶44.  Additionally, the government agrees that the base offense level is increased by four points pursuant to U.S.S.G. §2K2.1(b)(5), as the defendant engaged in trafficking of firearms.  PSR at ¶45.

The defendant's criminal history category is I, as the defendant has no convictions, thus he has zero criminal history points.  PSR at ¶56.  The defendant's corresponding guideline sentencing range would therefore be 18-24 months.  PSR at ¶118.

The government recommends that the Court impose a sentence of 24 months incarceration, and a term of supervised release of

---

[1] The CW is a known TRG - Grey gang member.

three years with certain conditions including a geographical restriction aimed at preventing the defendant from returning to the area of the family business on Westford Street - the location of the instant offense and significant gang violence in Lowell. Other conditions include an associational restriction that precludes the defendant from contacting or being in the company of individuals who are associated with TRG - Grey.[2]  The government requests these supervised release conditions for two reasons.  The first is to protect the citizens of the City of Lowell, particularly the residents of the area surrounding Westford Street from firearm and gang related activity.  See Map attached as Exhibit A.[3]  The second is to protect the defendant from himself by keeping him outside of areas and away from people that will provide opportunity and temptation to commit additional crimes.  This is critical here as the defendant's crimes all occurred in or around the same location in Lowell.

This memorandum will focus on the particular facts of this case and the specifics of the defendant's charges in support of the government's request for a period of incarceration and particularized supervised release conditions that will increase the likelihood that the defendant will not re-offend.

---

[2] The government will provide the Court, defense counsel, and the probation department with a non-exhaustive list of individuals under separate cover.

[3] The map also details the proposed area of exclusion.

### A. Incarceration

While the defendant has no prior criminal history, the characteristics of the weapons sold, the defendant's access to weapons, and the defendant's own statements during each transaction suggest that he is a sophisticated dealer in firearms. The PSR correctly calculated the defendant's guideline range at 18-24 months. For the reasons stated below, the government believes that a sentence at the high end of the guideline range is appropriate.

To begin, on September 25, 2007, Hok sold a 9mm, Smith & Wesson, model SW9VE, semi-automatic pistol with serial number PBK7201 and two magazines to the CW in exchange for $450.00 dollars. Notably, on September 24, 2007, in the presence of Lowell Police Detectives, the CW placed a call to Hok for the purpose of purchasing a firearm for $425.00. At that time, Hok indicated that he *may be selling the firearm to another individual*, however, after subsequent negotiation, Hok agreed to sell the CW the firearm and two magazines for $450.00. This suggests that the CW was not the only customer of the defendant's in the illegal sale of firearms.

Additionally, according to the CW, while in the freezer area completing the transaction, Hok indicated that the firearm had, "no bodies on it," and "it still has the serial numbers on it." Again, the use of this terminology suggests that Hok was more

than an "casual" illegal dealer in firearms.

On October 25, 2007, Hok sold a .40 caliber, Smith & Wesson, model SW40VE, semi-automatic pistol with serial number PBZ5740 and 3 magazines to the CW in exchange for $650.00 dollars. On October 25, 2007, the CW placed a consensually recorded telephone call to Hok to confirm a price of $650.00 for a .40 caliber firearm. During the conversation, the CW told Hok that he had the $650.00 and Hok agreed to meet the CW "inside the laundromat." Hok indicated that he wanted to meet at the laundromat because there were "no cameras." Clearly this statement suggests that the defendant was well aware of the criminality of his behavior and sought to hide it.

During the October 25, 2007 transaction, Hok confirmed during the call that the firearm was "clean" (meaning it has not been used in a homicide), again suggesting the defendant's sophistication is dealing in firearms. This behavior also demonstrates that the defendant is aware of not only the illegality, but also the danger that these weapons pose when put on the street, in the hands of gang members and, as such, it attempting to distance himself from the weapons.

Perhaps most telling of the defendant's sophistication in the illegal sale of firearms are his own statements and behavior during the October 25, 2007 transaction. During this transaction, the CW and Hok engaged in conversation regarding the

6

firearm, and Hok clarified that a portion of the firearm "is polymer" and demonstrated the safety on the weapon. Hok is observed to be wearing plastic gloves while handling the firearm. During the exchange, the CW asked if Hok could get additional firearms and Hok explained that he would be able to. The CW asked Hok about the serial number on the firearm and Hok told the CW not to erase it because "if you get caught with this, you do more time without the serial number...if you take out a serial number you do more time." While the defendant contends in his Objections to the PSR that he should not be subject to the four level enhancement for trafficking in firearms (Objection #6) clearly his clandestine behavior in selling a firearm in a basement while wearing gloves suggests otherwise.

Furthermore, in addition to the sale of the firearm, the defendant also sold the CW 3 magazines - two 10 round magazines and one 14 round magazine. The nature and capacity of these magazines demonstrates the advanced nature of the defendants dealing.

On March 13, 2008, Hok sold a 9mm Luger caliber, S.W.D. Incorporated, model M-11, semi-automatic pistol with serial number 85-0001806, two muzzle attachments, 4 magazines, (2) 7.62 x 39mm cartridges, and (8) 9mm Luger live cartridges to the CW in exchange for $900.00 dollars. The defendant instructed the CW to come to meet him at "Trigger's house" because he wasn't working

at the liquor store.  Agents surveilled the CW to the area of "Trigger's" house at 27-29 Howard Street, Lowell.[4]

The CW walked into the residence and engaged in the transaction in the living room.  Hok handed the CW the firearm and stated, "pretty nice...3 clips, 2 long ones and a short one."  There is some conversation between the CW and a third person (believed to be "Trigger") regarding a silencer.  On the video, Hok handles the weapon with a muzzle attachment and indicates, "I think this is the one to shoot spindle and the other one shoots straight."  Additionally, Hok is heard inserting a clip into the firearm and states, "This one is a 32 round clip."  The CW tells Hok, "this one is for the hood."  Hok described a shorter clip that was also with the firearm.  Again, Hok can be seen wearing plastic gloves when handling the firearm.

Yet again, the defendant demonstrates his familiarity in dealing in firearms, as well as his knowledge of the illegality - specifically the illegality that the CW was bringing the weapon to the "hood."  Again here, the defendant is wearing gloves while selling a powerful firearm to a person he knows to be a gang member, in the presence of another gang member.  This behavior

---

[4] The CW knew who "Trigger" was and where "Trigger" lived. Additionally, Det. Daniel Desmarais, through his employment with the Lowell Police, knows "Trigger" to be Sarath Bou, a known TRG gang member, and his residential address to be 29 Howard Street, Lowell.

falls well short of a person naive to the severity of this behavior or ignorant as to the purpose in which the firearm was to be utilized. The only reasonable inference to be drawn from the defendant's wearing gloves is that the defendant himself believed that the firearms and ammunition were going to be used in crimes of violence and the defendant took care not to leave any evidence that he touched the weapons.

In addition to the firearm, the defendant sold the CW two muzzle attachments, 4 magazines, (2) 7.62 x 39mm cartridges, and (8) 9mm Luger live cartridges. Two of the magazines had a 32 round capacity, one had a 12 round capacity, and one had a 10 round capacity.

Based upon the defendant's behavior that supports his conviction, the government seeks a period of incarceration. The instant offense is serious, and the underlying circumstances show a sophisticated and dangerous pattern of behavior that the defendant engaged in. The defendant's behavior contributed to the violence in the Westford Street area. The nature and circumstances of the offense, the need for deterrence, and the need to protect the public all require that the Court impose a sentence of incarceration within the applicable guideline range, namely, 18-24 months.

### B. Conditions of Release

In order to assist the defendant's re-integration after

completing this sentence and assure the defendant's continued good behavior, the government asks the Court to consider the following special conditions of the defendant's supervised release.

> **i.   The Sentence Should Include an Exclusion from the Westford Street area.**

This Court has broad discretion to impose appropriate conditions of supervised release in this or any other case. Under 18 U.S.C. §3583(d), the court is directed to impose certain mandatory conditions of release and is authorize "any other condition it considers appropriate." The only constraint on this authority is that the conditions be reasonably related to the criteria set out in § 3553 – nature/circumstances of the offense, history/characteristics of the defendant, seriousness of the offense, need for future deterrence/public protection, and need to rehabilitate the defendant.

This Court need look no further than the text of section 3583 to conclude that an exclusionary area is an appropriate condition. Section 3583(d) specifically authorizes a sentencing court to impose as a condition of supervised release any permissive condition set forth in 3563(b)(1)-(10)- or 3563(b)(12)-(20). Those provisions specifically allow a sentencing court to require a defendant to "refrain from frequenting specified kinds of places or from associating

unnecessarily with specified persons," to "reside in a specified place or area, or refrain from residing in a specified place or area," or "remain in the jurisdiction of the court, unless granted permission to leave by the court or a probation officer."

These restrictions simply make sense in this case where much of the troubles that the defendant has experienced are specifically related to the areas in which he worked.  It is also clear that the Westford Street area of Lowell suffers from substantial gang activity.  The government therefore seeks a condition that would keep him out of that very same environment.  In United States v. Garrasteguy, 559 F.3d 34 (1st Cir. 2009), the First Circuit recently upheld a supervised release condition that included a geographical restriction banning the defendant from entering an entire County where the underlying crimes were committed in an area of that County.  See also United States v. Smith, 436 F.3d 307 (1st Cir. 2006) (upheld a supervised release condition that barred a defendant from seeing his young daughter; held that a sentencing court could ask the defendant "to refrain from frequenting specified kinds of places or from associating unnecessarily with specified persons"); United States v. Bolinger, 940 F.2d 478, 480 (9th Cir. 1991) ("Probation conditions may seek to prevent reversion into former crime-inducing lifestyle by barring contact with old haunts and associates, even though the activities may be legal"); United

11

States v. Cothran, 855 F.2d 749 (11th Cir. 1988)(validating a probation restriction that prevented defendant, convicted of cocaine distribution to minors, from traveling to Fulton County, Georgia because his return to a high-crime neighborhood in southeast Atlanta would likely result in his continued criminal activity and the endangerment of neighborhood youth).

Here, the defendant sold firearms on three separate occasions. On September 25, 2007, he sold a firearm at the Lowell Package Store, located at 303 Westford Street. On October 24, 2007, he sold a firearm at the Lowell Laundromat, located at 321 Westford Street, Lowell. On March 13, 2008, the defendant sold a firearm at 29 Howard Street, Lowell. 29 Howard Street is .06 miles from 303 Westford Street. Clearly, as the defendant's own sister relates, "the defendant needs to stay away from the area of the liquor store." PSR at ¶74.

### ii. Continued Education/Vocational training

The defendant should be required to continue his education while on supervised release. At the time of incarceration, the defendant was enrolled at the college level. (PSR at ¶¶97-98).

### iii. Employment

The defendant should be required to seek and maintain employment while on supervised release at a location other than the family business on Westford Street in Lowell.

### iv. Prohibition from Contacting Member or Associates of TRG - Grey

During the period of supervised release, the defendant is prohibited from contacting or being in the company of the co-defendants or other individuals who the government asserts are members/associates of TRG - Grey, including, but not limited to:

Shane Carney
Vila Malakham
Saravy Sok
Sophandara Sok
Eric O'Brien
Savong Moun
Jonathan Sheehan
Sarath Bou
Jonathan Mello
George Bettencourt
Eugene Phonchanh
Jerry Ouch
Sareth Ruos
Chanracksmiy Thang

## II. CONCLUSION

The government seeks a reasonable and just sentence that reflects the seriousness of the offense and the impact this offense has on the Lowell community, a community plagued by firearm and gang violence in recent years, while being mindful that the defendant has no prior criminal history.  As such, the government recommends that the Court impose a sentence that includes a period of incarceration of 24 months, and a term of supervised release of three years with certain conditions including a geographical restriction and associational

restrictions aimed at preventing the defendant from reverting back to criminal behavior in the Westford Street area.

                                              Respectfully submitted,

                                              MICHAEL K. LOUCKS
                                              ACTING UNITED STATES ATTORNEY

                             By:   <u>s/ Cara L. Krysil</u>
                                              CARA L. KRYSIL
                                              SPECIAL ASSISTANT U.S. ATTORNEY

**CERTIFICATE OF SERVICE**

    I, Cara L. Krysil, Special Assistant U.S. Attorney, certify that I caused a copy of the foregoing to be served by efiling on:

COUNSEL OF RECORD

on April 28, 2009.

                                        s/ Cara L. Krysil
                                        CARA L. KRYSIL
                                        Special Assistant U.S. Attorney